**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| WORKERS UNITED, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | Civil Action No. 2:23-cv-4036 |
| v. | : | |
| | : | |
| STARBUCKS CORPORATION, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**STARBUCKS CORPORATION'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND ..............................................................................3

    A.    Workers United's Use of the Starbucks Brand in Public Posts Caused Harm to Starbucks That Needed to be Corrected ...................................3

    B.    Starbucks Was Forced to Attempt to Resolve the Public Confusion and Mitigate the Threat and Harm to Its Partners and Brand Reputation ...........................6

    C.    Starbucks Filed Its Comprehensive Trademark and Copyright Infringement Complaint in the Southern District of Iowa Before This Action Was Filed..................9

ARGUMENT ....................................................................................................11

    A.    The Rule 12(b)(6) Legal Standard ................................................11

    B.    The Court Should Dismiss Workers United's Defamation Claim with Prejudice Because It Fails to State a Claim, and Amendment Would Be Futile ................................13

         1.    The Challenged Statements Are Not Defamatory as a Matter of Law ..............................14

             a.    The Challenged Statements Are Pure Opinions, Without More, and Therefore Not Defamatory as a Matter of Law ..............................15

             b.    The Challenged Statements Are Opinions Based on Disclosed Facts and Therefore Cannot Be Defamatory as a Matter of Law ..............................17

         2.    Workers United Did Not and Cannot Allege Actual Malice, Which Is Also Dispositive Because Workers United Is a Public Figure ..............................23

         3.    Amendment Would Be Futile, So Dismissal with Prejudice Is Warranted..............................26

    C.    The Court Should Dismiss or, Alternatively, Transfer Plaintiff's Declaratory Judgment Claim Pursuant to the First-Filed Rule ..................27

         1.    The First-Filed Legal Standard Grants Discretion to Dismiss or Transfer the Declaratory Judgment Claim..................27

         2.    The First-Filed Rule Applies Here..........................28

         3.    Equity Favors the Affirmative Iowa Claims Over the Declaratory Relief Claim Here ................................30

4.      Dismissal is Most Appropriate Here............................................................31

CONCLUSION........................................................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................................11, 25

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).......................................................................................................11

*Burton v. Teleflex Inc.,*
    707 F.3d 417 (3d Cir. 2013)....................................................................................13, 14

*Chavez v. Dole Food Co.,*
    836 F.3d 205 (3d Cir. 2016) (*en banc*) ..............................................................27, 28, 31

*Colony Nat. Ins., Co. v. UHS Child. Servs.*
    No. 09-2916, 2009 WL 3007334 (E.D. Pa. Sept. 11, 2009).......................................32

*Commc'ns Test Design, Inc. v. Contec, LLC,*
    367 F. Supp. 3d 350 (E.D. Pa. 2019)*, aff'd,* 952 F.3d 1356 (Fed. Cir. 2020)...................30, 32

*Crosley Corp. v. Hazeltine Corp.,*
    122 F.2d 925 (3d Cir. 1941)........................................................................................27

*CTI Sys. SA v. Herr Indus., Inc.,*
    No. 14-CV-6723, 2015 WL 1073667 (E.D. Pa. Mar. 11, 2015)................................29, 31, 32

*Davis v. Wells Fargo,*
    824 F.3d 333 (3d Cir. 2016)......................................................................................4, 12

*EEOC v. Univ. of Pa.,*
    850 F.2d 969 (3d Cir. 1988), *aff'd on other grounds*, 493 U.S. 182 (1990) ..........................27

*Egli v. Strimel,*
    251 F. Supp. 3d 827 (E.D. Pa. 2017) ....................................................................15, 16, 17

*Excalibur Reinsurance Corp. v. Select Ins. Co.,*
    No. 15-2522, 2015 WL 12806513 (E.D. Pa. July 7, 2015) ...................................30, 31, 32

*Gertz v. Robert Welch,*
    418 U.S. 323 (1974).................................................................................................24, 25

*Henry v. Nat'l Ass'n of Air Traffic Specialists, Inc.,*
    No. 93–2526, 1994 WL 406550 (4th Cir. Aug. 4, 1994) (per curiam)....................................24

*Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*,
  502 F. App'x 201 (3d Cir. 2012) ..............................................................30, 31, 32

*Lee v. TMZ Prods., Inc.*,
  710 F. App'x 551 (3d Cir. 2017) ........................................................................26

*Mallory v. Simon & Schuster, Inc.*,
  728 F. App'x 132 (3d Cir. 2018) .................................................................14, 24

*McCafferty v. Newsweek Media Grp., Ltd.*,
  955 F.3d 352 (3d Cir. 2020).................................................................. *passim*

*Miller v. Transamerican Press, Inc.*,
  621 F.2d 721 (5th Cir. 1980) .............................................................................24

*Monge v. Univ. of Pa.*,
  Civ. No. 22-2942, 2023 WL 4032661 (E.D. Pa. June 14, 2023) (Pratter, J.) ................. *passim*

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964)...............................................................13, 23, 24, 26

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000) (Alito, J.) ...............................................................12

*Palagano v. NVIDIA Corp.*,
  No. 15-1248, 2015 WL 5025469 (E.D. Pa. Aug. 25, 2015) (Pratter, J.) ................................28

*Philidor RX Servs. LLC v. Polsinelli PC*,
  No. 22-2836, 2023 WL 6290746 (3d Cir. Sept. 27, 2023) ....................................................12

*PPG Indus. V. Zurawin*,
  52 F. App'x 570 (3d Cir. 2002) ........................................................................25

*Remick v. Manfredy*,
  238 F.3d 248 (3d Cir. 2001)......................................................................13, 16

*Rizzo v. Nutanix, Inc.*,
  Civ. No. 20-5140, 2021 WL 1214504 (E.D. Pa. Mar. 31, 2021) (Pratter, J.)..............13, 14, 23

*Smith v. Lynn*,
  809 F. App'x 115 (3d Cir. 2020) ...........................................................................1

*Smith v. Pennsylvania*,
  No. 21-5473, 2022 WL 3139854 (E.D. Pa. Aug. 4, 2022), *aff'd*, No. 22-2632,
  2023 WL 3336642 (3d Cir. May 10, 2023) ............................................................27

*Starbucks Corp. v. Serv. Emps. Int'l Union*, No. 23-cv-00068 (S.D. Iowa Oct. 18, 2023), ECF No. 1 ......................................................................................................10

*Starbucks Corp. v. Serv. Emps. Int'l Union*,
No. 23-cv-00068 (S.D. Iowa Nov. 10, 2023), ECF No. 13 ............................................ *passim*

*Transcore, L.P. v. Mark IV Indus. Corp.*,
Civ. No. 09-2789, 2009 WL 3365870 (E.D. Pa. Oct. 15, 2009) (Pratter, J.).................. *passim*

*Trivedi v. Slawecki*,
642 F. App'x 163 (3d Cir. 2016) ..................................................................................14, 25

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................ *passim*

Fed. R. Civ. P. 201 .................................................................................................1, 12

**Other**

First Amendment .......................................................................................15, 17, 23, 26

Shannon Thaler, *Starbucks workers union voices 'solidarity with Palestine' after Hamas attack*, New York Post (Oct. 12, 2023, 4:55 PM) ........................................................4

Plaintiff Workers United's ("Workers United") defamation claim should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6) because the three Starbucks[1] statements it alleges constitute defamation are pure opinions, based on disclosed facts, and such statements are not capable of a defamatory meaning as a matter of law. The claim also fails for the independent reason that Workers United failed to allege actual malice, which it is required to do as a public figure. In addition, Workers United's declaratory judgment claim should be dismissed under the first-filed rule because it is subsumed by Starbucks affirmative claims in an earlier-filed action pending in the United States District Court for the Southern District of Iowa.

## INTRODUCTION

In the wake of the October 7, 2023 attacks in Israel, Plaintiff Workers United improperly and prominently utilized Starbucks world-renowned trademarks to post social media statements that the public perceived as supporting violence in Israel and misconstrued as statements made or endorsed by Starbucks. Workers United's statements caused substantial and ongoing harm to Starbucks and its "partners,"[2] prompting hundreds of angry customer complaints, calls to boycott Starbucks, and threats lodged at Starbucks partners in its stores and through its customer care line.[3]

---

[1] Defendant Starbucks Corporation is referred to in this Memorandum of Law as "Starbucks."

[2] Starbucks refers to its employees as "partners."

[3] Additional details of the confusion and harm caused to Starbucks resulting from Workers United's and its affiliates' use of Starbucks intellectual property can be found in the Iowa Complaint. Am. Compl., *Starbucks Corp. v. Serv. Emps. Int'l Union d/b/a Workers United d/b/a Starbucks Workers United and Iowa City Starbucks Workers United*, No. 23-cv-00068 (S.D. Iowa Nov. 10, 2023), ECF No. 13, attached as Exhibit D (the "Iowa Complaint"). The Iowa Complaint is a matter of public record, so this Court may judicially notice and review the allegations in that complaint in connection with deciding Starbucks Motion to Dismiss. Fed. R. Civ. P. 201(b) & (c)(2); *Smith v. Lynn*, 809 F. App'x 115, 117 (3d Cir. 2020) (non-precedential opinion) ("[I]n deciding a motion to dismiss, a district court is permitted to review matters of public record . . . ."); *see also* p. 12, *infra*.

Having been involuntarily thrust into this controversy by Workers United, Starbucks was compelled to issue public statements that it condemns terrorism, hate, and violence; to explain that the views expressed by Workers United members are not the views of Starbucks; and to issue a cease-and-desist letter to Workers United.  Rather than complying with Starbucks cease-and-desist letter, Workers United instead rushed to this Court to file this baseless action for defamation and a cursory declaratory judgment claim.  But, by then, Starbucks had already filed an affirmative lawsuit in the United States District Court for the Southern District of Iowa to protect its partners and brand, as well as the integrity of the trademarks and copyrights in its iconic STARBUCKS word mark and logos (the "Iowa Action").[4]

Workers United's defamation claim should be dismissed with prejudice because it has not alleged, and has no basis in law or fact to allege, that Starbucks made any actionable defamatory statements.  Plaintiff claims that Starbucks implied Workers United supports or advocates "terrorism, hate, and violence" in Workers United's social media posts.  Notably, Workers United does not allege (nor can it) that any single *fact* in Starbucks statements is defamatory.  Workers United's defamation claim fails because the statements Workers United challenges are nothing more than Starbucks own non-actionable opinions about Workers United's social media posts, which are incapable of being proven true or false.  Furthermore, Starbucks expressly disclosed to readers the factual basis for its statements, including embedding a link to an article that showed Workers United's public post in its entirety.  Starbucks statements are, therefore, absolutely

---

[4] *Compare* Docket Activity Report, *Starbucks Corp. v. Serv. Emps. Int'l Union*, No. 23-cv-00068 (S.D. Iowa), attached as Exhibit B (indicating the time the complaint was filed in Iowa Action), *with* Docket Activity Report, *Workers United v. Starbucks Corp.*, No. 23-cv-04036 (E.D. Pa.), attached as Exhibit C (indicating the time the Complaint was filed in this action).  As the parties previously reported to this Court, a stay pending mediation was entered in the Iowa Action on January 19, 2024.  *See* ECF No. 15.

privileged, and they are not defamatory as a matter of law.  As a nationally known union with thousands of members, Workers United is a public figure that must also allege actual malice to support its defamation claim, which it did not and cannot do.  Therefore, its defamation claim fails for this independent reason as well.

Workers United's declaratory judgment claim should also be dismissed pursuant to the first-filed rule.  This claim involves substantially the same parties and subject matter, and raises the same legal question raised by Starbucks in the earlier-filed action—namely, whether Workers United's unauthorized use of Starbucks intellectual property, which has led to public confusion and substantial and continuing harm to Starbucks, constitutes trademark and copyright infringement.  Indeed, the Iowa Action completely subsumes the declaratory judgment claim here and provides more fully articulated claims and supporting facts, brings additional intellectual property claims, and names not only Workers United, but also additional related entities as defendants that are not parties to this suit.  Resolution of the claims in the Iowa Action will leave nothing to adjudicate in the declaratory judgment claim here.  Thus, in the interest of comity and judicial efficiency, this Court should exercise its discretion under the first-filed rule to dismiss the declaratory judgment claim or transfer it to the Southern District of Iowa.

## FACTUAL BACKGROUND

### A.      Workers United's Use of the Starbucks Brand in Public Posts Caused Harm to Starbucks That Needed to be Corrected

Starting October 7, 2023, the day reports emerged of the attacks in Israel, Workers United and certain of its member organizations posted or shared on their official social media accounts various statements that expressed support for violence in Israel.  For example, Workers United (under the name "Starbucks Workers United") posted on X, using the Starbucks Marks and

Starbucks Works,[5] and adaptations and variations thereof, stating "Solidarity with Palestine!"  That post (copied in its entirety below)[6] contained more than this statement alone.  Rather, that quote amplified the content of another post that, according to the caption in that post, depicted a "Bulldozer operated by Gaza Resistance tearing down" a fence in the Gaza strip during the attack on Israel on October 7.



Starbucks Workers United tweeted "Solidarity with Palestine!" after Hamas ambushed Israel on Saturday, triggering calls to "boycott Starbucks."
Twitter/Starbucks Workers United

---

[5] "Starbucks Marks" refers to Starbucks-owned trademark registrations covering the wordmark STARBUCKS and its logos bearing the signature Starbucks siren, and "Starbucks Works" refers to Starbucks copyrights in those logos.

[6] This image of the post, which Workers United alleges was the basis for Starbucks statements, Compl. ¶ 40, includes the caption and credit from The New York Post, one of many press outlets and social media accounts to reprint the post even after it came down from the Starbucks Workers United X page.  The New York Post article, attached as Exhibit F, is specifically incorporated by the Starbucks October 11 web post at issue in the Complaint, which provides a link to the article: Shannon Thaler, *Starbucks workers union voices 'solidarity with Palestine' after Hamas attack*, New York Post (Oct. 12, 2023, 4:55 PM), https://nypost.com/2023/10/12/starbucks-workers-union-voices-solidarity-with-palestine.  *See* Compl. ¶¶ 2, 51–54, 70 (referencing and/or quoting October 11 web post that incorporates the New York Post article that incorporates the screenshot of the "Solidarity with Palestine!" post).  This Court may, and should, consider the full text of the statements excerpted in the Complaint because they are "integral to or explicitly relied upon in the complaint."  *Davis v. Wells Fargo*, 824 F.3d 333, 351 (3d Cir. 2016); *see also* p. 12, *infra*.

Similarly, other Workers United affiliates, including the Iowa City local chapter of Workers United that uses the name "Iowa City Starbucks Workers United," began posting messages in support of actions against Israel the very day the attack began and has continued to voice its ongoing support since then:[7]





Workers United's use of the well-established and widely recognized Starbucks intellectual property elicited quick and harsh backlash ***against Starbucks.***  Shortly after these posts were publicized, Starbucks received hundreds of complaints from customers and members of the public and calls for boycotting Starbucks, which resulted in vandalism of Starbucks property and provoked individual threats on Starbucks baristas.  *See* Compl. ¶ 38 ("Defendant accused Workers United of making statements 'advocating for violence in the Middle East' and claimed that those statements 'have caused, and are continuing to cause, substantial and irreversible harm to

---

[7] *See* Ex. D (Iowa Compl.) ¶ 66.

Starbucks.'"); *id.* ¶ 42 ("In the October 13 letter, Defendant claimed that consumers had made complaints to the company.").[8]  Senator Rick Scott called for a boycott of Starbucks.  *See* Compl. ¶ 44.  And, in yet another of countless examples, Florida State Representative Randy Fine publicly declared, "If you go to Starbucks, you are supporting killing Jews."[9]  The immediate and extensive backlash against Starbucks began before Starbucks made any public statement on the conflict.

### B.    Starbucks Was Forced to Attempt to Resolve the Public Confusion and Mitigate the Threat and Harm to Its Partners and Brand Reputation

Pushed into the fray by Workers United, Starbucks was forced to take action to correct the public perception and mitigate the threats and harm caused to Starbucks by Workers United's actions.  Workers United takes issue with three statements Starbucks made in connection with its efforts to correct this public confusion and resulting harm: (1) an October 11, 2023 statement on the Starbucks website, *see* Compl. ¶¶ 51–52, 70; (2) an October 13, 2023 cease-and-desist letter issued by Starbucks to Workers United, *see id.* ¶¶ 58–59, 70; and (3) Starbucks October 17, 2023 message to Starbucks partners, *see id.* ¶¶ 60–61, 70.

First, on October 11, 2023, Starbucks issued a truthful, public statement on its website, stating, in relevant part, "We unequivocally condemn these acts of terrorism, hate and violence, and disagree with the statements and views expressed by Workers United and its members. Workers United's words and actions belong to them, and them alone."  Compl. ¶ 51.  That message further expressed support and sympathy for those affected by the ongoing attacks:

---

[8] *See also* Partner Message from Sara Kelly: Affirming Starbucks Position and Addressing Statements from Workers United (Oct. 17, 2023), https://stories.starbucks.com/press/2023/ starbucks-condemns-acts-of-terror-strongly-disagrees-with-statements-made-by-workers-united, attached as Exhibit I (Oct. 17, 2023 message to partners describing backlash and threats to Starbucks and its baristas, which Plaintiff's rely on in Complaint); *see also, e.g.*, Ex. D (Iowa Compl.) ¶¶ 65–77.

[9] *Id.* ¶ 75.

**Posted Oct. 11, 2023**

Starbucks wants to again express our deepest sympathy for those who
have been killed, wounded, displaced and impacted following the
heinous and unacceptable acts of terror, escalating violence and hate
against the innocent in Israel and Gaza this week. Furthermore, we are
deeply troubled by the spread of misinformation, inaccurate headlines
and third-party social media posts stemming from statements made
by Workers United.

> To be clear: We unequivocally condemn these acts of terrorism,
> hate and violence, and disagree with the statements and views
> expressed by Workers United and its members. Workers
> United's words and actions belong to them, and them alone.

Starbucks website post (Oct. 11, 2023), https://one.starbucks.com/get-the-facts/workers-united-
does-not-speak-for-starbucks, attached as Exhibit E (providing full text of Oct. 11 web post relied
on in the Complaint).  In its reference to "inaccurate headlines," the web post incorporated and
linked to the New York Post article that includes a screenshot of the Workers United "Solidarity
with Palestine!" post and describes the resulting backlash against Starbucks.  *See id.*; *see also*
Compl. ¶ 40 (referencing the "Solidarity with Palestine!" post that is provided in the New York
Post article); Ex. F (New York Post article).

Then, on October 13, 2023, with threats against Starbucks mounting as a result of the
Workers United social media posts, Starbucks sent Workers United a cease-and-desist letter.  *See*
Compl. ¶¶ 35–36; *see also* Letter from Ropes & Gray LLP to Workers United (Oct. 13, 2023),
attached as Exhibit G (providing full text of the Oct. 13, 2023 cease-and-desist letter relied on in
the Complaint).  In the letter, Starbucks referred to its "statement issued October 11, 2023," which
"responded to the events of the week," Ex. G, and expressed concern about Workers United's
"statements advocating for violence in the Middle East," Compl. ¶ 58.  Based on the hundreds of

threats and complaints received from the public and press coverage of the events, Starbucks noted: "The public took your organization's comments to mean that Starbucks supports the attacks on civilians." Ex. G (providing full text of the Oct. 13, 2023 cease-and-desist letter relied on in the Complaint). Starbucks explained the harm caused to it by confusion over the source of Workers United's statements and demanded that Workers United "**immediately** take corrective action," including that Workers United "and all affiliates must stop using the Starbucks name, logos, and other intellectual property, and any variants of those, to identify themselves." *Id.*

Workers United responded to that letter, stating that it "understood [Starbucks] to be threatening a lawsuit for trademark infringement." Compl. ¶ 37. Furthermore, Workers United admitted it believed the letter referred to the public confusion caused by "the Starbucks Workers United twitter account stating 'Solidarity with Palestine.'" *Id.* ¶ 40. Disregarding Starbucks assertions of public confusion and harm caused by Workers United's post, Workers United made clear on October 17, 2023, that it would not cease using Starbucks intellectual property or rectify the confusion as to attribution of the viewpoints. *See id.* ¶ 47; Letter from Workers United to Ropes & Gray LLP (Oct. 17, 2023), attached as Exhibit H (providing full text of Oct. 17, 2023 response letter relied on in the Complaint).

Accordingly, Starbucks took further action to address the misappropriation of Starbucks intellectual property that was causing widespread consumer confusion, which is ongoing and continues to harm Starbucks. On October 17, Starbucks sent a company-wide message informing its partners of the ongoing situation that arose, which stated:

**Posted Oct. 17, 2023**

On Tuesday, Oct. 17, 2023, in a letter to all U.S. partners, Starbucks chief partner officer Sara Kelly provided an update on a letter sent to Workers United International President Lynne Fox demanding that Workers United cease and desist from using the Starbucks name and branding and disengage from dialogue misrepresenting the Company's position on the Israel–Hamas war.

> Shortly after October 7, Workers United posted a statement with an image of a bulldozer tearing down a part of the Israel and Gaza border, reflecting their support for violence perpetrated by Hamas. **Unfortunately, as violence against the innocent in the region continues to escalate, some people are mistakenly tying these remarks to us,** because Workers United and its affiliates and members continue to use our name, logo and intellectual property.
>
> **The ongoing confusion from this misinformation has sadly led directly to incidents where angry, hurt customers are confronting partners** in our stores and sending graphic and violent messages to partners in our Customer Contact Center (CCC). Our retail leaders and support teams are prioritizing partner care and safety, working to ensure every store and the CCC feels supported in de-escalating these situations.
>
> It is in the best interest and safety of our partners and customers for Workers United to disengage from the dialogue and from misrepresenting Starbucks. Workers United's actions risk putting partners from all stores, including both non-union and unionized stores, in harm's way. **On Friday, we contacted Workers United demanding they 1) immediately stop using our company name, logo and intellectual property, and 2) issue an immediate correction.** This morning, unfortunately, they rejected that request. As a result, Starbucks will file litigation against the union in federal court, and we intend to pursue all legal options in defense of our partners and our company.
>
> **Sara Kelly, evp and chief partner officer**

Ex. I (providing full text of the Oct. 17, 2023 message to partners relied on in the Complaint); *see also* Compl. ¶ 61 (referencing and providing excerpted language from the Oct. 17 message to Starbucks partners). Because the confusion had directly impacted many of its partners, Starbucks truthfully and transparently informed its partners of the actions Starbucks had taken to date, the response received from Workers United, and Starbucks planned immediate next step to "file litigation against the union in federal court, and . . . to pursue all legal options." Compl. ¶¶ 48–49; *see also* Ex. I (providing the full text of the Oct. 17, 2023 message to partners relied on in the Complaint).

### C.   Starbucks Filed Its Comprehensive Trademark and Copyright Infringement Complaint in the Southern District of Iowa Before This Action Was Filed

The day after updating its partners, on October 18, 2023, at 15:05:27 C.D.T (16:05:27 E.D.T), Starbucks filed its initial complaint in the Iowa Action against Workers United, and related entities, including its local chapter, Iowa City Starbucks Workers United, affirmatively alleging multiple, overlapping intellectual property claims, including trademark and copyright

infringement.  *See* Complaint, *Starbucks Corp. v. Serv. Emps. Int'l Union d/b/a Workers United d/b/a Starbucks Workers United and Iowa City Starbucks Workers United*, No. 23-cv-00068 (S.D. Iowa Oct. 18, 2023), ECF No. 1, attached as Exhibit A (the "First-Filed Complaint"); *see also* Ex. B (indicating the time the original complaint was filed in Iowa Action).[10]

The same day, October 18, 2023, Workers United raced to this Court and attempted to file an anticipatory lawsuit seeking a declaratory judgment that its use of the Starbucks intellectual property "does not constitute trademark infringement, or any other related claim."  Compl. ¶ 68. Workers United, however, was second-in-time to file, commencing this action at 16:22:25 E.D.T. (17 minutes after the Iowa Action commenced), and its defensive claim for a declaratory judgment is fully subsumed by the comprehensive intellectual property claims asserted by Starbucks in the earlier-filed Iowa Action.  *See* Compl. ¶ 65–68 (seeking a single-count declaratory judgment that "that its use of the Starbucks Workers United name and logo does not constitute trademark infringement, or any other related claim with respect to Defendant's name and logo"); Ex. C (indicating the time the Complaint was filed in this action, referred to herein as the "Pennsylvania Action").

Workers United also alleged a claim of defamation against Starbucks based entirely on three communications—Starbucks "October 11 website post, October 13 letter (which was distributed to the media), and October 17 letter to employees," Compl. ¶ 70, which are described above and attached in full as Exhibits E, G, and I.  In its Complaint, Workers United relies on limited excerpts from these three communications, removed from the context of the full statements,

---

[10] On November 10, 2023, Starbucks amended its complaint in the Iowa Action to allege additional details and to modify the specific affiliates of Workers United that are identified as defendants.  *See* Ex. D (Iowa Compl.).

and alleges that Starbucks implies "that Workers United supports terrorism and violence."  Compl. ¶ 70.  As set forth in detail below, however, the three communications at issue are not defamatory as a matter of law.

## ARGUMENT

Workers United's defamation claim is legally baseless and should be dismissed with prejudice because each of the challenged statements is an absolutely privileged, non-actionable opinion based on disclosed facts.  Because Workers United's defamation claim is deficient as a matter of law, this Court should dismiss the defamation claim with prejudice.  The Court should also exercise its discretion to dismiss without prejudice the remaining declaratory judgment claim under the first-filed rule or, alternatively, it should transfer the action to the Southern District of Iowa.  Dismissal or consolidation of this litigation in Iowa, the primary forum, serves principles of comity and judicial efficiency and would avoid needless and duplicative dual-track litigation.

### A.    The Rule 12(b)(6) Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[11]   "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth.  *Id.*; *see also Monge v. Univ. of Pa.*, Civ. No. 22-2942, 2023 WL 4032661, at *2 (E.D. Pa. June 14, 2023) ("At the motion to dismiss stage, the Court must accept factual allegations as true, 'but [it is not] compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual

---

[11] While this Court must accept Workers United's well-pleaded factual allegations as true for purposes of this Motion to Dismiss, Starbucks disagrees with the allegations and does not concede their truth.

allegation.'" (alteration in original) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007))).   Furthermore, where, as here, the facts alleged in the complaint demonstrate that amendment would be futile, dismissal with prejudice is warranted.  *See Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000) (Alito, J.).

In a defamation case involving public statements, the Court can and should consider the complete statements of the defendant where they are referenced within and integral to the complaint or where they are subject to judicial notice because they were publicly posted.  Fed. R. Civ. P. 201(b) (judicial notice appropriate of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *id.* at 201(c)(2) ("The court . . . ***must*** take judicial notice if a party requests it and the court is supplied with the necessary information." (emphasis added)); *Davis*, 824 F.3d at 351 (courts may properly consider "documents 'integral to or explicitly relied upon in the complaint'" in deciding motions to dismiss (citation omitted)); *Ames v. Am. Radio Relay League, Inc.*, 716 F. App'x 115, 119 (3d Cir. 2017) (non-precedential opinion) (affirming dismissal of defamation claim after "consideration of both the allegations in the complaint and undisputedly authentic documents referenced therein or integral to the complaint"); *see also Philidor RX Servs. LLC v. Polsinelli PC*, No. 22-2836, 2023 WL 6290746, at *1 n.3 (3d Cir. Sept. 27, 2023) (non-precedential opinion) (explaining that plaintiffs' failure to attach contract to complaint did "not prevent [the court] from considering its full language at the motion-to-dismiss stage . . . because the Contract [was] 'integral to [and] explicitly relied upon in the complaint.'" (second alteration in original) (quoting *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014))).

### B.   The Court Should Dismiss Workers United's Defamation Claim with Prejudice Because It Fails to State a Claim, and Amendment Would Be Futile

Where, as here, the challenged communications are not capable of a defamatory meaning, "the claim should be dismissed." *Remick v. Manfredy*, 238 F.3d 248, 261 (3d Cir. 2001).[12]   This question "is a 'threshold issue' to be determined by the court." *Burton v. Teleflex Inc.*, 707 F.3d 417, 434 (3d Cir. 2013); *see also Rizzo v. Nutanix, Inc.*, Civ. No. 20-5140, 2021 WL 1214504, at *4 n.4 (E.D. Pa. Mar. 31, 2021) (Pratter, J.) ("'It is for the court to determine, in the first instance, whether the statement of which the plaintiff complained is capable of a defamatory meaning.'" (citing *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 923 (3d Cir. 1990))).   Workers United's allegations cannot survive this threshold inquiry—the claim for defamation should be dismissed with prejudice because the alleged statements are not capable of a defamatory meaning as a matter of law.

In addition, because Workers United is a public figure,[13] it must also prove by clear and convincing evidence that the statements were false and that they were made with "actual malice." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *see also McCafferty*, 955 F.3d at 359 ("To show defamation, a public figure (even if just a 'limited-purpose public figure' . . . ) must show that the publisher acted with 'actual malice.'" (quoting *Am. Future Sys., Inc. v. Better Bus.*

---

[12] Under Pennsylvania law, Workers United can survive dismissal under Rule 12(b)(6) only if it plausibly alleged facts sufficient to support each of the following "seven elements: (1) that the statement was defamatory; (2) that [Starbucks] published it; (3) that the statement was about [Workers United]; (4) that readers would understand the statement as defamatory; (5) that readers would understand that the defamatory statement was about [Workers United]; (6) that the publication harmed [Workers United]; and (7) that [Starbucks] lacked a 'conditional[] privilege[]' to make that statement." *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020) (quoting 42 Pa. Cons. Stat. § 8343(a)).   While this Motion focuses on the alleged statements' non-actionable character and the lack of allegations concerning actual malice, Starbucks does not concede that Workers United has plausibly alleged any of the elements required to state a claim for defamation.

[13] *See* pp. 23–24, *infra*.

*Bureau of E. Pa.*, 923 A.2d 389, 400 (Pa. 2007))); *Mallory v. Simon & Schuster, Inc.*, 728 F. App'x

132, 135 (3d Cir. 2018) (non-precedential opinion) (same) (citing *Marcone v. Penthouse Int'l*

*Magazine for Men*, 754 F.2d 1072, 1087 (3d Cir. 1985)); *Trivedi v. Slawecki*, 642 F. App'x 163,

166 (3d Cir. 2016) (non-precedential opinion) (collecting cases holding same).

### 1.     The Challenged Statements Are Not Defamatory as a Matter of Law

In determining the threshold issue of whether a statement is capable of a defamatory

meaning, "[t]he statement ***must be examined in context*** to determine its likely effect on the

reader." *Burton*, 707 F.3d at 434 (emphasis added); *see also Rizzo*, 2021 WL 1214504, at *4 n.4

(same). Here, Workers United relies on limited excerpts from three Starbucks communications—

"the October 11 website post, October 13 letter (which was distributed to the media), and October

17 letter to employees"—and alleges that Starbucks defamed Workers United because it "has

falsely stated and implied that Workers United has made multiple 'statements' supporting

terrorism and violence; that Worker[s] United has a 'position' in support of terrorism and violence;

and that Workers United has 'views' supporting terrorism and violence." Compl. ¶¶ 70–72.[14]

Starbucks communications are not capable of a defamatory meaning for at least two reasons. ***First***,

the alleged characterization of Workers United's "statements," "position," or "views" expressed

---

[14] *See also* Compl. ¶ 50 ("Starbucks has stated and implied that Workers United supports
and advocates for violence and terrorism . . . ."); *id.* ¶ 52 (alleging October 11 Starbucks web post
"implies that Workers United has made 'statements' and expressed 'views' supporting 'terrorism,
hate and violence.'"); *id.* ¶ 59 (alleging "October 13 letter implied that the 'position' of Starbucks
Workers United is to support 'the use of violence.'"); *id.* ¶¶ 60–61 (alleging October 17 "message
to employees asserting that Workers United 'support[s] . . . violence perpetrated by Hamas.'"
(alterations in original)); *id.* ¶ 72 ("Starbucks has falsely stated and implied that Workers United
has made multiple 'statements' supporting terrorism and violence; that Worker United has a
'position' in support of terrorism and violence; and that Workers United has 'views' supporting
terrorism and violence."). Starbucks does not concede that Workers United's interpretation of
Starbucks statements is accurate.

in its social media posts as reflecting support for violence and terrorism are pure opinions, and opinions, "without more"—*i.e.*, some wrongful conduct—are incapable of being defamatory no matter how derogatory they are.  *McCafferty*, 955 F.3d at 358 ("[D]erogatory characterizations without more are not defamatory.").  ***Second***, "an opinion, label, or speculation ***based on disclosed facts* . . . . *cannot*** defame" as a matter of law.  *Id.* at 357 (emphasis added); *see also id.* at 355 ("[O]pinions based only on disclosed facts . . . are not enough to show defamation . . . .").  Each of the Starbucks statements challenged by Workers United is a pure opinion and an opinion or label based on disclosed facts.  As a result, the statements at issue are non-actionable as a matter of law, and the defamation claim should be dismissed with prejudice.

### a. The Challenged Statements Are Pure Opinions, Without More, and Therefore Not Defamatory as a Matter of Law

"As Pennsylvania courts recognize, pure opinions cannot be defamatory."  *McCafferty*, 955 F.3d at 357; *see also Monge*, 2023 WL 4032661, at *3 ("Under Pennsylvania law, '[a] statement of fact can be verified as true or false, whereas an expression of opinion only conveys a subjective belief of the speaker.'" (alteration in original) (quoting *Meyers v. Certified Guar. Co.*, 221 A.3d 662, 670 (Pa. Super. Ct. 2019))); *Egli v. Strimel*, 251 F. Supp. 3d 827, 842 (E.D. Pa. 2017) ("[O]nly statements of fact, rather than mere expressions of opinion, are actionable under Pennsylvania law . . . ." (citation omitted)).  "That holds true even when an opinion is extremely derogatory, like calling another person's statements 'anti-Semitic.'"  *McCafferty*, 955 F.3d at 357 (quoting *Jones v. City of Philadelphia*, 893 A.2d 837, 845 (Pa. Commw. Ct. 2006)); *id.* at 354 ("[T]he First Amendment protects virtually all of those opinions, even offensive and hurtful ones.").

The Third Circuit's analysis in *McCafferty* is particularly instructive on the protections afforded pure opinions.  *McCafferty* involved a Newsweek article that quoted a professor's disapproval of using children for political campaigning, stating, "'These kids are being

weaponized' and 'they are defending raw racism and sexual abuse.'"  *Id.* at 357 (quoting Newsweek article at issue).  The Third Circuit held that those statements were pure opinions and thus not defamatory as a matter of law.  *Id.* at 357–58; *see also, e.g.*, *Remick*, 238 F.3d at 263 (affirming dismissal of defamation claim based on non-actionable opinion under Pennsylvania law: "[defendant's] comments regarding [plaintiff's] professional competence would be viewed under Pennsylvania law as opinion and hence not defamatory"); *Egli*, 251 F. Supp. 3d at 843 (finding challenged statements were opinions and thus could not support a defamation claim).  The court explained "derogatory characterizations ***without more*** are not defamatory. . . . [T]he accusation must imply more, by for instance suggesting that the accused has personally broken the law . . . . But [the statements here] alleged no specific, unlawful wrongdoing. . . . ***These characterizations cannot be defamatory***."  *McCafferty*, 955 F.3d at 358 (citing *MacElree v. Phila. Newspapers, Inc.*, 674 A.2d 1050, 1054–55 (Pa. 1996)) (emphases added).

Here, Workers United alleges that Starbucks defamed Workers United through "public statements indicating that Workers United supports terrorism and violence."  Compl. ¶ 70.[15]  But a statement that another person's conduct or communications convey support for a particular position or viewpoint is an opinion expressing the speaker's understanding of the conduct or statement, and such a statement cannot be verified as true or false and is therefore considered pure opinion.  *See, e.g. Egli*, 251 F. Supp. 3d at 843 (holding that a letter explaining that the defendant viewed certain conduct by plaintiff "as harassment or trespassing . . . reflected Defendants' opinions and cannot ground a defamation claim.").  Furthermore, as in *McCafferty*, there are no allegations in the Complaint that Starbucks alleged any "specific, unlawful wrongdoing" by

---

[15] *See also* n.14, *supra*.

Workers United in furtherance of terrorism and violence.  *McCafferty*, 955 F.3d at 358; *see* Compl.

Indeed, the full context of Starbucks communications plainly demonstrates that Starbucks did not

make any such allegations.  *See* Exhibits E, G, and I.  Thus, here, as in *Egli* and *McCafferty*, these

characterizations are pure opinions, without more, that "cannot be defamatory" as a matter of law,

and the claim should be dismissed for this reason alone.  *McCafferty*, 955 F.3d at 358.

> **b.    The Challenged Statements Are Opinions Based on Disclosed Facts and Therefore Cannot Be Defamatory as a Matter of Law**

In addition, the challenged statements are not defamatory because they fall within the

absolute privilege afforded to opinions based on facts that have been disclosed to the reader.

*McCafferty*, again, is on point.  As the Third Circuit explained there, "Under the First Amendment,

opinions based on disclosed facts are '***absolutely privileged***,' no matter 'how derogatory' they

are," and therefore protected speech that is not actionable as defamation.  *Id.* at 357 (emphasis

added) (citations omitted).  The reason for this unrelenting privilege is the commonsense notion

that, when the underlying facts are disclosed, "readers can easily judge the facts for themselves,"

and thus there is no risk that the stated opinions or speculation could defame their subject.  *Id.*

(citing *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985) (applying Pennsylvania law)).

A review of the challenged statements reveals that they are absolutely privileged opinions

based on disclosed facts.  ***First***, the Starbucks October 11, 2023 web post states, in relevant part:

**Posted Oct. 11, 2023**

Starbucks wants to again express our deepest sympathy for those who have been killed, wounded, displaced and impacted following the heinous and unacceptable acts of terror, escalating violence and hate against the innocent in Israel and Gaza this week. Furthermore, we are deeply troubled by the spread of misinformation, inaccurate headlines and third-party social media posts stemming from statements made by Workers United.

> To be clear: We unequivocally condemn these acts of terrorism, hate and violence, and disagree with the statements and views expressed by Workers United and its members. Workers United's words and actions belong to them, and them alone.

Ex. E.

Workers United paints this communication as defamatory, claiming that it "implies that Workers United has made 'statements' and expressed 'views' supporting 'terrorism, hate and violence,'" Compl. ¶¶ 51–52, but the post does not say that, *see* Ex. E. Rather, the only references to Workers United are: (1) "we are deeply troubled by the spread of misinformation, inaccurate headlines and third-party social media posts stemming from statements made by Workers United"; (2) "We unequivocally condemn these acts of terrorism, hate and violence, and disagree with the statements and views expressed by Workers United and its members"; and (3) "Workers United's words and actions belong to them, and them alone." *Id.* To the extent these statements may convey the opinion that Workers United supports terrorism, hate, and violence, Starbucks directly discloses the underlying facts upon which the opinion is based. Compl. ¶¶ 51–52. In addition to the facts set forth in the October 11 post itself, the post incorporates and links directly to the New York Post article that sets forth the facts at issue: "The union representing nearly 9,000 Starbucks baristas expressed 'solidarity with Palestine' after Hamas terrorists massacred more than 1,200

18

Israelis—triggering calls to boycott the coffee giant."  Ex. F.  The New York Post article also includes a screenshot of the Starbucks Workers United X post, which calls for "Solidarity with Palestine!":



Starbucks Workers United tweeted "Solidarity with Palestine!" after Hamas ambushed Israel on Saturday, triggering calls to "boycott Starbucks."

Twitter/Starbucks Workers United

*Id.*; *see also* Compl. ¶ 40 (referencing Workers United's "Solidarity with Palestine!" post). Readers could make their own conclusion whether Workers United's "Solidarity with Palestine!" X post supported terrorism and violence based on the post itself and facts provided in the Starbucks

web post and the New York Post article that was incorporated into the web post.[16]  As a result, the October 11, 2023 web post is not defamatory as a matter of law.

**Second**, the October 13, 2023 letter, which was addressed directly to Workers United, cannot support Workers United's defamation claim.  Workers United alleges that "[t]he October 13 letter asserted that Starbucks Workers United had made 'statements advocating for violence in the Middle East'" and thereby "implied that the 'position' of Starbucks Workers United is to support 'the use of violence.'"  Compl. ¶¶ 58–59.  As discussed above, the claim that Workers United's statements, position, and views reflect support for terrorism and violence is pure opinion, and, here, the facts on which that opinion is based—particularly the public outcry about the perceived support for terrorism and violence—are disclosed in the letter itself:

> Your organization's use of the Starbucks name, logos, and branding as part of your organization's identity misleads the public to erroneously associate the organization's stated positions with Starbucks.  The public took your organization's comments to mean that Starbucks supports the attacks on civilians.  **Starbucks does not support your organization's position.**  To the contrary, Starbucks has denounced the use of violence.  In a statement issued October 11, 2023, Starbucks responded to the events of the week by "express[ing] our deepest sympathy for those who have been killed, wounded, displaced and impacted following the heinous acts of terror, escalating violence and hate against the innocent in Israel and Gaza this week.  Starbucks unequivocally condemns acts of hate, terrorism and violence."

> Despite the issuance of the statement, anger against Starbucks persists because your organization's actions have fueled the inaccurate perception that Starbucks supports violence against civilians.

Ex. G.  Starbucks even provided concrete examples of the public outrage it had experienced up to that point as a result of Workers United's statements:

---

[16] Indeed, numerous customers and members of the public made such a conclusion and contacted Starbucks directly to express confusion, anger, and dissatisfaction with a position they perceived Starbucks was endorsing based on Workers United's use of Starbucks name and Starbucks Marks.

Senator Rick Scott amplified the public outrage against Starbucks resulting from your organization's statements by calling for a nationwide boycott of Starbucks. Your organization's communications have directly led to enraged and volatile consumers confronting baristas and making over 1,000 complaints to the company.

By fomenting this anger, your organization has recklessly endangered the safety and well-being of hundreds of thousands of baristas around the world, including its own members and those who fled conflicts or have friends and family living in conflict.  Baristas trying to create moments of connection with customers instead must de-escalate, calm down and in some cases engage security for their own safety from customers irate because they mistakenly believe that Starbucks has put itself in the middle of the Middle East conflict and supports attacks on civilians.  Baristas face physical and emotional threats and carry that trauma home with them.

*Id.*

In addition, as reflected in the quoted language above, the letter also references the Starbucks "statement issued October 11, 2023," which incorporated and linked to the New York Post article with a description of Workers United's statements and a screenshot of its X post demanding "Solidarity with Palestine!" over an image of a bulldozer destroying the Israel-Gaza border fence.  *See* Exhibits E–G; *see also* Compl. ¶ 40 (referencing Workers United's "Solidarity with Palestine!" post).   Accordingly, the *opinion* "that Starbucks Workers United had made 'statements advocating for violence in the Middle East," Compl. ¶ 58, is based on the facts disclosed in the letter itself, including the underlying facts in the incorporated New York Post article that includes a screenshot of Workers United's online post and the anger directed at Starbucks from people who believed the post supported terrorism and violence.  As a result, the challenged statement is a non-actionable opinion or label based on disclosed facts.  *See McCafferty*, 955 F.3d at 357–58.

**Third** and **finally**, in its October 17, 2023 message to its partners, Starbucks again explained the factual basis for its opinion:

**Posted Oct. 17, 2023**

On Tuesday, Oct. 17, 2023, in a letter to all U.S. partners, Starbucks chief partner officer Sara Kelly provided an update on a letter sent to Workers United International President Lynne Fox demanding that Workers United cease and desist from using the Starbucks name and branding and disengage from dialogue misrepresenting the Company's position on the Israel–Hamas war.

> Shortly after October 7, Workers United posted a statement with an image of a bulldozer tearing down a part of the Israel and Gaza border, reflecting their support for violence perpetrated by Hamas. **Unfortunately, as violence against the innocent in the region continues to escalate, some people are mistakenly tying these remarks to us,** because Workers United and its affiliates and members continue to use our name, logo and intellectual property.
>
> **The ongoing confusion from this misinformation has sadly led directly to incidents where angry, hurt customers are confronting partners** in our stores and sending graphic and violent messages to partners in our Customer Contact Center (CCC). Our retail leaders and support teams are prioritizing partner care and safety, working to ensure every store and the CCC feels supported in de-escalating these situations.
>
> It is in the best interest and safety of our partners and customers for Workers United to disengage from the dialogue and from misrepresenting Starbucks. Workers United's actions risk putting partners from all stores, including both non-union and unionized stores, in harm's way. **On Friday, we contacted Workers United demanding they 1) immediately stop using our company name, logo and intellectual property, and 2) issue an immediate correction.** This morning, unfortunately, they rejected that request. As a result, Starbucks will file litigation against the union in federal court, and we intend to pursue all legal options in defense of our partners and our company.
>
> **Sara Kelly, evp and chief partner officer**

Ex. I.

> Workers United complains that the October 17 letter was defamatory because Starbucks "assert[ed] that Workers United 'support[s] . . . violence perpetrated by Hamas.'" Compl. ¶ 61 (second alteration in original). But, again, the letter does not say that. Rather, the letter states, "Shortly after October 7, Workers United posted a statement with an image of a bulldozer tearing down a part of the Israel and Gaza border, reflecting their support for violence perpetrated by Hamas." Ex. I. In other words, Starbucks stated its opinion that the disclosed fact of Workers United's "Solidarity with Palestine!" post "reflect[ed] their [Workers United's] support for violence perpetrated by Hamas." *Id.* Furthermore, within the October 17 message itself, Starbucks described the facts on which its opinion is based—the Workers United X post that called for "Solidarity with Palestine!" and featured "an image of a bulldozer tearing down a part of the Israel

and Gaza border" and the consumer and public outrage arising from the belief that the Workers

United post indicated that Starbucks supported violence and terrorism. Ex. I.[17]

Thus, like the challenged statements made on October 11 and 13, the challenged statement

within the October 17 message is an opinion based on disclosed facts and, therefore, not capable

of a defamatory meaning. *See McCafferty*, 955 F.3d at 357–58. The claim should be dismissed

with prejudice on this basis. *See id.*; *see also Rizzo*, 2021 WL 1214504, at *4 n.4 ("Dismissal is

appropriate when the statements at issue are not capable of having a defamatory meaning.").

### 2. Workers United Did Not and Cannot Allege Actual Malice, Which Is Also Dispositive Because Workers United Is a Public Figure

Workers United's defamation claim also fails because the Complaint does not allege actual

malice. As a nationally known and active union with thousands of members,[18] Workers United is

a public figure and must, therefore, plead and prove facts that demonstrate actual malice in order

to state a claim for defamation. *McCafferty*, 955 F.3d at 359 ("To show defamation, a public

figure . . . must show that the publisher acted with 'actual malice.'" (citation omitted)); *Monge*,

2023 WL 4032661, at *6 (explaining public-figure plaintiff "'must allege *facts* to support an

inference of actual malice' at the pleading stage" (quoting *Pace v. Baker-White*, 850 F. App'x 827,

831 (3d Cir. 2021))). "The First Amendment requires this demanding standard" of proving actual

malice when a public figure alleges defamation. *McCafferty*, 955 F.3d at 359 (citing *Sullivan*, 376

U.S. at 279–80).

---

[17] The October 17 message reprinted the Starbucks October 11 web post, and thereby included the link to the New York Post article and the accounts of confusion and harm arising from the post.

[18] Compl. ¶ 5; *see also* Workers United, an SEIU Affiliate, https://workersunited.org.

"Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures . . . ." *Gertz v. Robert Welch*, 418 U.S. 323, 342 (1974).  An entity qualifies as a general-purpose public figure—*i.e.*, "a public figure for all purposes"—when it has "general fame or notoriety in the community" or "pervasive involvement in the affairs of society." *Id.* at 352.  As a nationally known and outspoken union, Workers United is a general-purpose public figure.  *See id.*; *see also, e.g.*, *Henry v. Nat'l Ass'n of Air Traffic Specialists, Inc.*, No. 93–2526, 1994 WL 406550, *2 n.4 (4th Cir. Aug. 4, 1994) (per curiam) (explaining that elected leader of 1,700-member union was a public figure); *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 724 (5th Cir. 1980) (finding high-ranking union official to be a public figure).[19]

"Actual malice is present when a statement is made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Mallory*, 728 F. App'x at 135 (quoting *Sullivan*, 376 U.S. at 280).  "Reckless disregard 'is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing.'"  *Id.* (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).  Rather, the plaintiff must plead and prove that "that the defendant in fact entertained serious doubts as to the truth of his publication."  *Id.* (quoting *St. Amant*, 390 U.S. at 731).  This is a "high burden" that requires more than "'proof of failure to

---

[19] Even if Workers United were not a general-purpose public figure, it would be a limited-purpose public figure for this lawsuit because its X post calling for "Solidarity with Palestine!" has been the subject of substantial media attention.  *See* Compl. ¶ 40 (stating Workers United's belief that Starbucks challenged statements "refer[] to a tweet posted on the Starbucks Workers United twitter account stating 'Solidarity with Palestine'"); Ex. F (New York Post article displaying and reporting on the X post); *Mallory*, 728 F. App'x at 135 n.1 ("[A] limited purpose public figure is 'an individual [who] voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.'" (alterations in original) (quoting *Marcone*, 754 F.2d at 1082)).

investigate'"; rather, the plaintiff must plead and prove by clear and convincing evidence that the defendant "'act[ed] with a high degree of awareness of . . . probable falsity.'"  *Monge*, 2023 WL 4032661, at *6 (second alteration in original) (quoting *Gertz*, 418 U.S. at 332); *see also Trivedi*, 642 F. App'x at 166–67 (discussing standard of proof required of public figures).  Workers United falls far short of its burden here.

This Court's June 14, 2023 decision in *Monge* is illustrative.  There, the plaintiff alleged that "[t]he false and defamatory statements . . . were published with knowledge that said statements, innuendo, inference, and manner in which they were presented were false and/or with reckless disregard for whether said material was false, said conduct constituting actual malice."  *Monge*, 2023 WL 4032661, at *6.  This Court, however, dismissed the defamation claims, concluding that "[s]uch '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' cannot overcome a Rule 12(b)(6) motion to dismiss."  *Id.* (second alteration in original) (quoting *Ashcroft*, 556 U.S. at 678).

In this case, Workers United's allegations are even more conclusory and threadbare than those in *Monge* and do not plead a single fact concerning Starbucks mindset or purported awareness of probable falsity.  Indeed, Workers United does not even allege "actual malice."  *See generally* Compl. (containing no allegation of "actual malice").  Instead, it baldly alleges that "Starbucks made these statements with knowledge of their falsity" and "with malice."  *Id.* ¶¶ 73–74.  But those allegations do not satisfy the Rule 8 standard to "'allege *facts* to support an inference of ***actual malice***' at the pleading stage," which is distinct from common law malice.  *Monge*, 2023 WL 4032661, at *6 (second emphasis added) (citation omitted); *see also McCafferty*, 955 F.3d at 359 ("'Actual malice' is a term of art that does not connote ill will or improper motivation."); *PPG Indus. V. Zurawin*, 52 F. App'x 570, 579 (3d Cir. 2002) (not precedential opinion) (explaining "the

25

distinction between actual and common law malice"). Nor could Workers United credibly allege actual malice when Starbucks merely offered its opinion about Workers United's social media posts based on disclosed facts.[20]

Accordingly, here, as in *Monge*, Workers United failed to meet the "demanding standard" that "[t]he First Amendment requires," and its defamation claim should be dismissed for this independent reason. *McCafferty*, 955 F.3d at 359, 360 (citing *Sullivan*, 376 U.S. at 279–80) (holding "the District Court properly dismissed [the] defamation claim" where plaintiff did "not plead facts that suggest actual malice"); *see also Monge*, 2023 WL 4032661, at *7 (dismissing defamation claim for failure to plead facts showing actual malice).

### 3. Amendment Would Be Futile, So Dismissal with Prejudice Is Warranted

Where, as here, the facts alleged demonstrate that amendment would be futile, dismissal with prejudice is warranted. *See Oran*, 226 F.3d at 291. There are no facts that Workers United could truthfully allege to satisfy actual malice, *see* pp. 23–25, *supra*, and the allegedly defamatory statements are absolutely privileged opinions based on disclosed facts, *see* pp. 14–23, *supra*. No amount of repleading will change what the posts and letter actually say. As a result, the challenged statements are incapable of any defamatory meaning as a matter of law, and, accordingly, amendment of the Complaint would be futile. *See, e.g.*, *Lee v. TMZ Prods., Inc.*, 710 F. App'x 551, 561 n.11 (3d Cir. 2017) (not precedential opinion) ("Because dismissal of the claims is based on a finding that the articles are immunized from any defamation claims based on the fair-report

---

[20] Starbucks, moreover, was not alone in opining that Workers United's posts expressed support for violence in Israel. Starbucks opinion was informed by the influx of calls and threats from customers that had confused Workers United's statements as those of Starbucks, newspaper reporting including the New York Post article about Workers United's posts, and statements by public officials and other public organizations calling for the boycott of Starbucks. *See* pp. 3–7, *supra*.

privilege, amendment would be futile, and dismissal with prejudice was warranted."); *Smith v. Pennsylvania*, No. 21-5473, 2022 WL 3139854, *15 (E.D. Pa. Aug. 4, 2022), *aff'd*, No. 22-2632, 2023 WL 3336642 (3d Cir. May 10, 2023) ("Because the Amended Complaint fails as a matter of law to state a claim for defamation . . . , amendment as to this claim would be futile.").  Therefore, Workers United's defamation claim should be dismissed **with prejudice**.

### C.   The Court Should Dismiss or, Alternatively, Transfer Plaintiff's Declaratory Judgment Claim Pursuant to the First-Filed Rule

#### 1.   The First-Filed Legal Standard Grants Discretion to Dismiss or Transfer the Declaratory Judgment Claim

The well-established "'first-filed rule' . . . is a comity-based doctrine stating that, when duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has priority." *Chavez v. Dole Food Co.*, 836 F.3d 205, 210 (3d Cir. 2016) (*en banc*); *id.* at 216 (the first-filed rule has been used since at least 1941 as demonstrated by the Chavez court's citation of *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929–30 (3d Cir. 1941)); *see also EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd on other grounds*, 493 U.S. 182 (1990) (stating in 1988, "Nearly fifty years ago, this court adopted what has become known as the 'first-filed' rule").  In other words, "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Univ. of Pa.*, 850 F.2d at 971 (alteration in original) (quoting *Crosley Corp.*, 122 F.2d at 929).  In this way, "[t]he first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank." *Id.*  It also ensures that "[t]he party who first brings a controversy into a court of competent jurisdiction for adjudication" is "free from the vexation of subsequent litigation over the same subject matter." *Transcore, L.P. v. Mark IV Indus. Corp.*, No. 09-2789, 2009 WL 3365870, at *4 (E.D. Pa. Oct. 15, 2009) (Pratter, J.) (quoting *Crosley Corp.*, 122 F.2d at 930).  To effect the purposes of the rule,

the court with jurisdiction over the second-filed action "has the discretion to decide whether to stay, transfer, or dismiss the case before it." *Chavez*, 836 F.3d at 210.

In exercising this discretion, courts "assess[] the appropriateness of the first-filed rule on a case-by-case basis, without reference to rigid requirements regarding similarities between parties and claims," in order "to promote efficiency and comity." *Palagano v. NVIDIA Corp.*, No. 15-1248, 2015 WL 5025469, at *2 (E.D. Pa. Aug. 25, 2015) (Pratter, J.).   Under this flexible framework, the first-filed rule does not require "complete identity of issues and parties"; rather, "the rule applies to cases that are substantially similar." *Id.* at *2 (citation omitted) (collecting cases); *see also Transcore, L.P.*, 2009 WL 3365870, at *4 (explaining the first-filed rule applies "where the subject matter of the later filed case substantially overlaps with that of the earlier one." (internal quotation marks citation omitted)).

## 2.   The First-Filed Rule Applies Here

The declaratory judgment action here should be dismissed or transferred to the Southern District of Iowa under the first-filed rule.   First, it is indisputable that Starbucks was the first to file suit. *See* pp. 9–11, *supra*.   Second, the Complaint in this action is substantially similar to both the original and amended complaints[21] in the first-filed Iowa Action: they involve "substantially similar" parties (Workers United and Starbucks) and substantially similar claims (trademark and

---

[21] While the substantive facts, claims, and key parties remained the same (*i.e.*, Starbucks, Workers United, and Iowa City Starbucks Workers United), Starbucks filed an amended complaint in the Iowa Action to include additional details and replace one of the defendants after learning more information about the structure of the related entities. *Compare* Ex. A, *with* Ex. D (Iowa Compl.).

copyright infringement claims)[22] that arise from the same set of operative facts (Workers United's use of Starbucks intellectual property).  *See* pp. 3–11, *supra*.  Indeed, Workers United's declaratory judgment claim in this action is completely subsumed by the claims asserted by Starbucks in the earlier-filed Iowa Action, and resolution of Starbucks affirmative claims in the Iowa Action would fully dispose of the issue raised by Workers United's declaratory judgment claim here.  The inclusion of two additional defendants in the first-filed Iowa Action also weighs in favor of dismissing this later-filed action so that all relevant parties may litigate the issues together in one proceeding.

This Court's analysis in *Transcore* is on point.  There, two lawsuits were filed eleven days apart, the first bringing affirmative claims for patent infringement and the latter a declaratory judgment claim of non-infringement and invalidity.  *Transcore*, 2009 WL 3365870, at *1–3.  While there were additional parties in the first-filed suit and an additional patent at issue in the second-filed suit, this Court granted the first-filer's motion to transfer the case pursuant to the first-filed rule, explaining that "[t]he applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align.  Rather, the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one."  *Id.* at *4; *see also CTI Sys. SA v. Herr Indus., Inc.*, No. 14-CV-6723, 2015 WL 1073667, at *4 n.26 (E.D. Pa. Mar. 11, 2015) ("[I]nclusion of other parties in the [first-filed action] does not render the first-filed rule inapplicable.").  Accordingly, this second-filed

---

[22] *Compare* Ex. D (Iowa Compl.) ¶¶ 83–150 (asserting **trademark and copyright infringement** claims**)** *with* Compl. ¶ 68 (seeking declaratory judgment that Workers United's "use of the Starbucks Workers United name and logo does not constitute **trademark infringement, or any other related claim** with respect to Defendant's name and logo." (emphasis added)).

Pennsylvania Action, which appears to be a failed attempt to file an anticipatory lawsuit, should be dismissed in the interests of comity and judicial economy.[23]

### 3. Equity Favors the Affirmative Iowa Claims Over the Declaratory Relief Claim Here

Dismissal or transfer of the declaratory judgment claim to the Southern District of Iowa is also warranted because the Iowa Action is the affirmative, coercive suit, while Workers United filed this declaratory action immediately after receiving Starbucks cease-and-desist letter in an effort to preempt Starbucks lawsuit.

Where, as here, "parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief," courts "ordinarily give ***priority to the coercive action***, regardless of which case was filed first." *Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 502 F. App'x 201, 206 (3d Cir. 2012) (non-precedential opinion) (emphasis added) (quoting *Rsch. Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir.2010)); *see also Commc'ns Test Design, Inc. v. Contec, LLC*, 367 F. Supp. 3d 350, 360 (E.D. Pa. 2019)*, aff'd,* 952 F.3d 1356 (Fed. Cir. 2020) ("dismiss[ing] the declaratory action in favor of [the defendant's] later-filed infringement action"); *Excalibur Reinsurance Corp. v. Select Ins. Co.*, No. 15-2522, 2015 WL 12806513, at *1 n.1 (E.D. Pa. July 7, 2015) ("[W]here the first-filed action seeks only declaratory relief, equity may require deference to a second-filed action for coercive relief.").

Courts do not favor declaratory judgments filed in a rush to the courthouse. In *Excalibur Reinsurance Corporation*, for example, the court dismissed the declaratory judgment claim (even

---

[23] None of the "rare" and "limited exceptions to the traditional first-to-file rule" apply: *i.e.,* there is no evidence of inequitable conduct, bad faith, forum shopping, or other extraordinary circumstances in the Starbucks filing. *Transcore*, 2009 WL 3365870, at *5.

though it was the first filed in time) because the declaratory judgment claim "was filed in bad faith, as it is improperly anticipatory and solely for declaratory relief," and "[a]lso weighing in favor of dismissal [was] Plaintiff's attempt to secure better procedural law by rushing to the courthouse ahead of Defendants." *Id.*  Similarly, in *Honeywell*, the Third Circuit affirmed the district court's decision to dismiss the declaratory judgment claim where plaintiff's conduct "suggested that it was attempting to beat the [defendant] to the courthouse." *See Honeywell Int'l, Inc.*, 502 F. App'x at 206.

Although Workers United was not successful in its attempt to file its declaratory judgment claim before Starbucks filed its coercive claims in the Iowa Action, the conduct by Workers United demonstrates that, like the plaintiff in *Honeywell*, Workers United "was attempting to beat [Starbucks] to the courthouse." 502 F. App'x at 206.  Moreover, like plaintiff's claim in *Excalibur*, Workers United's declaratory judgment claim "was merely declaratory, in bad faith, for forum-shopping purposes, anticipatory, and inequitable." 2015 WL 12806513, at *1 n.1.  Thus, here, as in *Honeywell* and *Excalibur*, equity compels dismissal of Workers United's declaratory judgment claim.

### 4.    Dismissal is Most Appropriate Here

Where, as here, the first-filed action "will likely dispose of [the] dispute," dismissal is "[m]ost [a]ppropriate."[24]  *CTI Sys. SA*, 2015 WL 1073667, at *4.  In this case, the issue on which Workers United seeks a declaratory judgment—whether its use of the "Starbucks Workers United name and logo . . . constitute[s] trademark infringement" or related claims, Compl. ¶ 68—will be resolved by the Iowa court's resolution of the trademark infringement and overlapping claims

---

[24] While dismissal is the most appropriate action here, the Court has discretion to dismiss without prejudice, transfer, or stay this second-filed action.  *See Chavez*, 836 F.3d at 210, 220.

asserted by Starbucks in that case. It follows that this Court should dismiss the declaratory judgment claim here. *CTI Sys. SA*, 2015 WL 1073667, at *4; *see also Colony Nat'l Ins., Co. v. UHS Child. Servs.*, Inc., No. 09-2916, 2009 WL 3007334, at *4 (E.D. Pa. Sept. 11, 2009) (granting dismissal under first-filed rule). Moreover, the fact that Workers United seeks a declaratory judgment on the same issue raised by Starbucks coercive claims in the Iowa Action further weighs in favor of dismissal here. *See, e.g.*, *Honeywell Int'l Inc.*, 502 F. App'x at 206 (affirming district court's dismissal of "Declaratory Judgment Act suit in favor of the second-filed action for coercive relief"); *Commc'ns Test Design, Inc.*, 367 F. Supp. 3d at 360 (dismissing declaratory judgment claim in favor of affirmative claims); *Excalibur Reinsurance Corp.*, 2015 WL 12806513, at *1 (same). In the alternative, this Court should transfer the declaratory judgment claim to the Southern District of Iowa where the first-filed action is pending or stay the claim pending resolution of the Iowa Action.[25] *See Transcore, L.P.*, 2009 WL 3365870, at *9.

## CONCLUSION

As set forth above, each of the statements challenged by Workers United as defamatory is a non-actionable opinion based on disclosed facts. Furthermore, Workers United did not—and cannot—allege that Starbucks made the challenged statements with actual malice, as the law requires for defamation claims brought by public figures. As a result, Workers United's defamation claim is deficient as a matter of law and cannot be corrected by amendment. Therefore,

---

[25] For the reasons set forth above, Workers United's defamation claim in this action should be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* pp. 13–27, *supra*. Efficiency and judicial economy will be well served by this Court's dismissal of the defamation claim, which will be fully briefed before this Court, particularly given this Court's familiarity with Pennsylvania defamation law and prior claims that are closely analogous to the claim at issue here. *See id.* If, however, the Court declines to dismiss the defamation claim under Rule 12(b)(6), it should also dismiss or transfer the defamation claim to the Southern District of Iowa because it arises from the same set of operative facts that underlie the trademark claims.

in the interests of comity and judicial economy, this Court should dismiss Plaintiff Workers United's defamation claim with prejudice pursuant to Rule 12(b)(6).   In addition, Workers United's declaratory judgment claim is completely subsumed by affirmative intellectual property claims asserted by Starbucks in an earlier-filed action involving substantially similar parties, issues, and facts.  It follows that this Court should also dismiss the declaratory judgment claim without prejudice or, alternatively, transfer it to the United States District Court for the Southern District of Iowa pursuant to the first-filed rule.


Dated: January 22, 2024                                 Respectfully submitted,

                                                        **DLA PIPER LLP**

Mary E. Gately (*pro hac vice* forthcoming)             */s/ Ilana H. Eisenstein*
500 Eighth Street NW                                    Ilana H. Eisenstein
Washington, DC 20004                                    Marie Bussey-Garza
Tel: (202) 799-4507                                     PA ID Nos. 94907; 324584
Fax: (202) 799-5507                                     1650 Market Street
*mary.gately@us.dlapiper.com*                           One Liberty Place, Suite 5000
                                                        Philadelphia, PA 19103
                                                        Tel: (215) 656-3300
                                                        Fax: (215) 656-3301
                                                        *ilana.eisenstein@us.dlapiper.com*
                                                        *marie.bussey-garza@us.dlapiper.com*


        *Attorneys for Defendant Starbucks Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of January 2024, I caused the Defendant Starbucks Corporation's Motion to Dismiss and accompanying Memorandum of Law in Support of Motion to Dismiss to be electronically filed using the Court's CM/ECF system, which will send notification of such filing to all current counsel of record.

<i>/s/ Ilana H. Eisenstein</i><br>Ilana H. Eisenstein